FILED
United States Court of Appeals
Tenth Circuit

March 25, 2019

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

JOHN EUGENE WALKER,

    Defendant - Appellee.

No. 17-4103

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:13-CR-00379-CW-1)**

---

Jennifer Williams, Assistant United States Attorney (John W. Huber, United States Attorney, and Jeannette F. Swent, Assistant United States Attorney, with her on brief), District of Utah, Salt Lake City, Utah, for Plaintiff-Appellant.

Adam Bridge, Assistant Federal Public Defender (Kathryn N. Nester, Federal Public Defender, Scott Keith Wilson, and Bretta Pirie, Assistant Federal Public Defenders, on brief), District of Utah, Salt Lake City, Utah, for Defendant-Appellee.

---

Before **TYMKOVICH**, Chief Judge, **HOLMES**, and **PHILLIPS**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

This case comes before us for a second time. Defendant-Appellee John

Walker, who pleaded guilty to two counts of bank robbery under 18 U.S.C. § 2113(a), was originally sentenced to time served—thirty-three days in pretrial detention—followed by three years of supervised release. The government appealed, and we reversed the sentence as substantively unreasonable and remanded for resentencing consistent with our opinion. On remand, the district court received new arguments and evidence before resentencing Mr. Walker to ten years of probation, two years of home confinement, and 500 hours of community service.

The government appeals again, and we are now asked (1) whether the district court, on remand, violated the mandate we issued in *United States v. Walker* ("*Walker I*"), 844 F.3d 1253 (10th Cir. 2017), by not sentencing Mr. Walker to a term of imprisonment; and (2) whether, even if the district court complied with our mandate, Mr. Walker's sentence following our remand nevertheless remains substantively unreasonable. The government also requests, in the event that we reverse and remand for resentencing, that we reassign the case to a different district court judge. Because we conclude that the district court did not run afoul of *Walker I*'s mandate when it declined to sentence Mr. Walker to a prison term and further conclude that the government has waived its remaining substantive reasonableness challenge, we **affirm** the district court's sentence. And, consequently, we **deny as moot** the government's request for reassignment.

**I**

We start by surveying (A) Mr. Walker's offense conduct, (B) the district court's original sentencing proceeding, (C) our opinion in *Walker I*, (D) the district court's resentencing proceeding, and (E) the district court's resentencing order.

**A**

In May 2013, Mr. Walker walked into a bank in Salt Lake City, Utah, while wearing a wig and fake mustache and yelled at the teller to give him money.[1] The teller gave him over two thousand dollars, and Mr. Walker left without further incident. Later that same month, Mr. Walker entered a second bank, this time in Sandy, Utah, while dressed in women's clothing. Again, he yelled at the teller, took over fifteen hundred dollars, and left. Police subsequently arrested Mr. Walker, who admitted to robbing both banks. Mr. Walker was indicted on two counts of bank robbery in violation of 18 U.S.C. § 2113(a). Although he was taken into custody after the arrest, he was released on pretrial supervision thirty-three days later. He subsequently pleaded guilty to both counts of bank robbery.

**B**

Shortly before Mr. Walker's sentencing hearing, he violated the conditions

---

[1]    Our recitation of the offense conduct comes from Mr. Walker's Presentence Report. *See* R. at 644–45, ¶¶ 5–8 (Presentence Report, dated Sept. 18, 2015) [hereinafter, "PSR"].

of his release when he was cited for driving under the influence and with an open container. After receiving these charges, Mr. Walker requested that the court defer his sentencing for thirteen months so that he could attend a faith-based residential treatment program. The district court granted the deferral, and Mr. Walker successfully completed the program.

At Mr. Walker's subsequent sentencing hearing, the court accepted the PSR's findings and calculated Mr. Walker's United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range to be 151 to 188 months' imprisonment.[2] This range reflected Mr. Walker's extensive criminal history, which, as Mr. Walker conceded, included involvement in at least ten previous bank robberies. The government argued for a below-Guidelines-range sentence of 120 months' imprisonment, whereas Mr. Walker—emphasizing his rehabilitation through the residential treatment program—argued for a five-year term of probation.

The district court discussed the 18 U.S.C. § 3553(a) factors but, in sentencing Mr. Walker, relied almost exclusively on his rehabilitation. The court gave Mr. Walker a time-served sentence, i.e., the thirty-three days of pre-trial detention, followed by thirty-six months of supervised release.

---

[2]     The Probation Office used the 2013 edition of the Guidelines in calculating Mr. Walker's Guidelines range. Neither party questions this choice on appeal; therefore, we also rely on the 2013 edition, to the extent that it is relevant to the resolution of the issues on appeal.

## C

The government appealed from the district court's sentence, claiming that it was substantively unreasonable. We reversed and remanded for resentencing, acknowledging that "the sentencing court sincerely tried to craft a just sentence" but concluding that "the court placed inadequate weight on the factors required by Congress." *Walker I*, 844 F.3d at 1255. To make this point, we assessed the district court's reasoning against the relevant § 3553(a) factors.

We concluded that only one—the nature and circumstances of the crime and Mr. Walker's history and characteristics, *see* § 3553(a)(1)—provided even partial support for a time-served sentence. As to that factor, we noted that "[t]he nature of the offense weighs strongly against a time-served sentence" but that "the offender's characteristics could reasonably support leniency." *Walker I*, 844 F.3d at 1257. The other § 3553(a) factors, however, favored imprisonment or were irrelevant. For instance, § 3553(a)(2)—that is, the need for the sentence imposed to reflect "the congressional aims of sentencing"—"weigh[ed] against a time-served sentence." *Id.* at 1258. We noted that "[t]he district court gave inadequate attention" to certain congressional aims, *id.* (discussing general deterrence); *see id.* ("the value of incapacitation . . . was never mentioned at sentencing" (citation omitted)), and found that some of these aims cut against the district court's sentencing conclusion, *id.* ("The value of incapacitating Mr. Walker further supports incarceration of Mr. Walker.").

5

We also determined that the sentencing range established by the Guidelines and the need to avoid unwarranted disparities, *see* § 3553(a)(4), (6), both "weigh[ed] against a time-served sentence." *Walker I*, 844 F.3d at 1258. To underscore this point, we compared Mr. Walker to the defendant in *United States v. Friedman*, 554 F.3d 1301 (10th Cir. 2009). We explained that in *Friedman* the defendant had also pleaded guilty to bank robbery and faced an identical Guidelines range. *See Walker I*, 844 F.3d at 1259. The district court in that case had imposed a sentence of fifty-seven months' imprisonment, but "we concluded that this sentence was substantively unreasonable because (1) the defendant had an extensive history of recidivism and lacked remorse and (2) the 57-month sentence created unwarranted sentence disparities." *Id.* While the *Walker I* panel noted some differences between the two cases, it reasoned that "[i]f the 57 months of incarceration in *Friedman* was an unreasonably light sentence, Mr. Walker's 33 days in pretrial detention was also unreasonably light." *Id.*

In sum, we concluded that, "[o]f the seven sentencing factors, three factors weigh[ed] against a time-served sentence, one point[ed] both ways, and three [were] inapplicable." *Id.* at 1259. Thus, we held that the district court erred because it "focused almost exclusively on Mr. Walker's new found sobriety"—i.e., a characteristic of Mr. Walker—to the exclusion of the other factors. *Id.* While we did "not question the materiality of this factor," we held that "by declining to impose any prison time, the district court effectively failed

to give any weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentencing disparities." *Id.*; *see id.* at 1255 ("In our view, this sentence was unreasonably short based on the statutory sentencing factors and our precedent.").

We ended the opinion as follows:

> We conclude that 33 days in pretrial detention constitutes an unreasonably short sentence. For admittedly robbing two banks as an armed career offender,[3] Mr. Walker would avoid any punishment and the sentence would give little or no weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentence disparities. In these circumstances, we regard the sentence as substantively unreasonable.
>
> Reversed and remanded for resentencing consistent with this opinion.

*Id.* at 1259–60.

Judge Hartz wrote a brief concurrence wherein he disagreed with the majority's analysis of the nature and circumstances of the crime and Mr. Walker's history and characteristics, *see* § 3553(a)(1). *Walker I*, 844 F.3d at 1260 (Hartz, J. concurring). In his view, Mr. Walker's "short period of apparent rehabilitation hardly counterbalances the seriousness of his offense and his extensive criminal

---

[3]    While we referred to Mr. Walker as an "armed career offender" in *Walker I*, the district court correctly noted on remand that "Mr. Walker was not armed during the two bank robberies in this case," and that, while the PSR classified Mr. Walker as a career offender, he was neither charged nor sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924. R. at 354 n.1 (Mem. Decision and Order on Resentencing, dated May 18, 2017).

7

record." *Id.*

**D**

On remand, the district court ordered the Probation Office to provide an update to the PSR that detailed Mr. Walker's lifestyle and conduct since the original sentencing. The court also ordered the parties to file supplemental briefing responding to *Walker I*, and it allowed the parties to submit supplemental evidence.

The update to the PSR explained that Mr. Walker had complied with all conditions of his supervision, maintained employment, and was living a modest life. Mr. Walker's Probation Officer also testified at a subsequent evidentiary hearing, stating that he did not "think a custody sentence would be beneficial in Mr. Walker's case" because of the "positive changes" that Mr. Walker had made in his life, namely his sobriety, employment, and familial ties. R. at 540–41 (Tr. of Evidentiary Hr'g on Resentencing, dated Apr. 24, 2017).

Mr. Walker submitted additional evidence of his rehabilitation. His wife testified about the positive effect that Mr. Walker had on her relationships with her daughter and granddaughter. Mr. Walker's other family members and drug-treatment-program classmates sent the district court "a small flood of letters" that the court characterized as "uniformly praising his character, work ethic, and the progress he [had] made in the past years." *Id.* at 361. Mr. Walker's counselor submitted a written statement that indicated Mr. Walker had been

8

"rehabilitated," no longer craved alcohol and drugs, and now "turn[ed] to God, his faith community and mentors" during stressful periods. *Id.* at 360–61. This counselor also testified at the evidentiary hearing, where she opined that removing Mr. Walker from his support system would "absolutely have a negative effect on him." *Id.* at 553.

At the end of the evidentiary hearing, Mr. Walker addressed the court. He testified that it was his "drinking that le[d] to other things," and that it was only when he was using drugs that he would "think about a bank." *Id.* at 620. He added that he "would never do a bank robbery if [he] wasn't under the influence." *Id.* at 617. He claimed that this problematic path from drug abuse to crime was "not going to happen" again because he had "been transformed," was "not the old Johnny," and did not "even think about drinking" anymore. *Id.* at 620.

The government, on the other hand, submitted its own additional evidence. Victims, including a teller at one of the robbed banks, indicated that Mr. Walker had shaken their personal senses of security, and one victim specifically testified that he believed Mr. Walker needed to be incarcerated for some period of time. Two law enforcement officers both testified about conversations that they had with Mr. Walker wherein he had admitted that he had robbed the banks due to financial difficulties.

In addition to this evidence, the parties offered oral arguments for the sentences that they thought would be appropriate. The government again argued

that Mr. Walker should be sentenced to 120 months' imprisonment, while Mr. Walker asserted that "five years of probation, a substantial period of home confinement, and community service" would be sufficient to satisfy the aims of sentencing. *Id.* at 374–75. At the conclusion of the evidentiary hearing, the court decided to continue the hearing "[i]n order to adequately address the issues raised by the United States, as discussed in the [*Walker I*] decision, the factors raised by the defense and the . . . testimony of the witnesses and of Mr. Walker." *Id.* at 621.

## E

Almost one month later, at the recommencement of the hearing, the district court provided the parties with a tentative sixty-one-page opinion, gave them about seventy-five minutes to digest it, and then again heard arguments from the parties. The tentative opinion indicated that the court would sentence "Mr. Walker to ten years of probation, with a mandatory review in five years, plus two years of home confinement, with case-appropriate monitoring and the standard exceptions, and 500 hours of community service." *Id.* at 377 (Mem. Decision and Order on Resentencing, dated May 18, 2017). After both parties completed their arguments, the court overruled the government's oral objections and made its tentative sentence final for the reasons stated in the opinion.

This opinion started by concluding that, in *Walker I*, the Tenth Circuit had issued "a general remand for resentencing consistent with the opinion [in *Walker*

10

*I*]." *Id.* at 355. This conclusion was based on the district court's reading of the remand language at the end of the *Walker I* opinion, which did "not require imposition of a specific sentence or limit [the district] court to considering sentences only within the Guideline range." *Id.* Thus, the district court engaged in a de novo resentencing, aiming to "appropriately weigh the specific congressional values the Tenth Circuit identified, as well as all the 18 U.S.C. § 3553(a) factors, and craft a sentence that is consistent with sentencing objectives, the Tenth Circuit's opinion, and other sentencing precedent." *Id.*

After reciting the procedural background and evidence before it, the court engaged in a lengthy analysis of the § 3553(a) factors. With respect to § 3553(a)(1), the nature and circumstances of the crime and Mr. Walker's history and characteristics, the district court concluded that Mr. Walker was a different individual post-rehabilitation and that this had been demonstrated by his success while on probation. *See, e.g.*, R. at 381–83 ("The most striking theme discernable from all of the evidence on resentencing is that there are two John Walkers: the old and the new."). This conclusion was supported by the testimony of Mr. Walker's counselor, who testified that Mr. Walker had been "rehabilitated," *id.* at 360–61, and the Probation Officer, who opined that he did not "think a custody sentence would be beneficial in Mr. Walker's case," *id.* at 540–41. While the court acknowledged that "[t]he nature of the offense and Mr. Walker's criminal history weigh[ed] strongly toward incarceration," *id.* at 410, it added that "the

11

extraordinary circumstances of Mr. Walker's current characteristics and rehabilitation" both counseled against incarceration. *Id.* at 411.

Section 3553(a)(2)(A) required the court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The district court determined that the seriousness of the offense and need for just punishment weighed in favor of incarceration, although "less so than in other cases because Mr. Walker's lifelong addiction mitigates the underlying purpose of retribution." R. at 410. But the court ultimately found that incarceration would not "promote respect for the law in light of Mr. Walker's significant recovery efforts." *Id.* at 410–11. In particular, the court agreed with Mr. Walker that, while his use of drugs had led him to crime, he was now sober and unlikely to relapse.

With respect to § 3553(a)(2)(B)—i.e., the need to provide adequate deterrence—the court concluded that Mr. Walker's rehabilitation made imprisonment unnecessary to specifically deter Mr. Walker, as he was unlikely to reoffend. With respect to general deterrence, the court cited social science studies indicating that probation was just as effective as imprisonment in providing deterrence. The court also reasoned that general deterrence may be more important with respect to certain crimes—identifying white-collar crimes in particular—than the type of crime at issue here, i.e., bank robbery. While the court did "not doubt that incarceration has some general deterrent effect," *id.* at

12

395, it found that, in this case, "the evidence is, at best, inconclusive as to whether a lengthy term of imprisonment . . . would provide any deterrent effect," *id.* at 397.

With respect to § 3553(a)(2)(C), the need to protect the public, and § 3553(a)(2)(D), the need for rehabilitation, the court concluded that further incarceration would likely harm Mr. Walker's recovery and increase the likelihood of him reoffending. Specifically, the court found it more likely than not that Mr. Walker would relapse into substance abuse and subsequently be led back into crime if he was removed from his support systems. This conclusion was again supported by the testimony of Mr. Walker's Probation Officer, who testified that he did not "think a custody sentence would be beneficial in Mr. Walker's case" because of the "positive changes" that Mr. Walker had made in his life. R. at 540–41. Likewise, Mr. Walker's counselor testified that removing Mr. Walker from his support system would "absolutely have a negative effect on him." *Id.* at 370.

Finally, with respect to the sentencing range established by the Guidelines and the need to avoid unwarranted sentencing disparities, *see* § 3553(a)(4), (6), the court recognized that its proposed sentence continued to create a disparity with other offenders sentenced for like crimes under the Guidelines but went to great lengths to explicate why that disparity was warranted in light of Mr. Walker's rehabilitation. In particular, the court noted that *Friedman*, which we

13

had discussed extensively in *Walker I*, had "expressed concern at the lack of any explanation by the district court" for why it had imposed such a significant variance from the Guidelines range. R. at 407. The district court concluded, however, that "Mr. Walker's case departs from *Friedman* based on the extensive record created here," including "Mr. Walker's exceptional recovery and conduct on four years of supervised release." *Id.* at 408. More specifically, while bank robbery convictions frequently lead to higher sentences, including the sentence in *Friedman* that we discussed in *Walker I*, the court relied on evidence that Mr. Walker had "move[d] past his addiction," "already succeeded on pretrial and postsentence supervised release," and had "shown remorse," to conclude that there were "more than adequate grounds in this record to justify the disparity." R. at 409.

"Overall," the district court concluded, "the balance of sentencing factors weighs toward a substantial variance from the Guideline range and toward a non-custody sentence in this case." *Id.* at 410. Thus, the district court imposed its sentence of ten years of probation, two years of home confinement, and 500 hours of community service.

The government appealed.

## II

The government raises two arguments against the district court's revised sentence. It argues (1) that the district court violated *Walker I*'s mandate when it

14

declined to sentence Mr. Walker to a prison term;[4] and (2) that, even if the district court's sentence did not run afoul of our mandate in *Walker I*, the sentence is nevertheless substantively unreasonable. We reject the government's first argument on the merits and find the second waived due to the government's inadequate briefing. Accordingly, we **affirm** the district court's sentencing order.

## A

We first address the government's primary contention: that the district

---

[4] The government frames the first issue on appeal as:

> Whether a sentence of no additional incarceration was substantively unreasonable for a serial bank robber whose career offender Guidelines range was 151–188 months, where this Court held in an earlier appeal that a sentence of no incarceration beyond 33 days of time served was unreasonable because it was too short.

Aplt.'s Opening Br. at 1–2. The two arguments explicated in the above text are distinct aspects of the government's appellate challenge. First, as the government made clear in its reply brief, it contends that the district court's sentence was substantively unreasonable *because it failed to adhere to our mandate*. *See* Aplt.'s Reply Br. at 3 n.1 ("[T]he district court abused its discretion by 'ignor[ing] this Court's holding that a no-prison sentence for Walker was substantively unreasonable.' While the government may not have used the word 'mandate,' its brief makes absolutely clear the substance of its argument: the district court exceeded the bounds of 'permissible choice' set by this Court in *Walker I*." (quoting Aplt.'s Opening Br. at 17)). We view this first argument as distinct from its second argument, that the district court's sentence was substantively unreasonable *on its own terms*. *See* Aplt.'s Reply Br. at 10 n.2 ("[E]ven if the mandate were not so limited, the district court abused its discretion because a sentence with no additional term of imprisonment was substantively unreasonable. As the government argues in its opening brief, the sentencing factors in § 3553(a) render a sentence with no term of imprisonment substantively unreasonable.").

15

court violated *Walker I*'s mandate when it declined to sentence Mr. Walker to a prison term. We reject this argument, agreeing with Mr. Walker that *Walker I*'s mandate was general and did not require the district court to impose a sentence of imprisonment. In the following discussion, we (1) lay out how the mandate rule applies in this circuit, and (2) examine the scope of *Walker I*'s mandate and analyze whether the district court violated that mandate by declining to sentence Mr. Walker to a prison term.

**1**

When we vacate and remand for resentencing, "the mandate rule controls." *United States v. West* ("*West II*"), 646 F.3d 745, 748 (10th Cir. 2011). The mandate rule, recognized by the Supreme Court since "its earliest days," states "that an inferior court has no power or authority to deviate from the mandate issued by an appellate court." *Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948); *accord United States v. Shipp* ("*Shipp II*"), 644 F.3d 1126, 1129 (10th Cir. 2011) ("The mandate rule is a discretion-guiding rule that generally requires trial court conformity with the articulated appellate remand." (quoting *United States v. Keifer*, 198 F.3d 798, 801 (10th Cir. 1999))). In the criminal sentencing context, the rule also finds statutory support in 18 U.S.C. § 3742(g), which provides that "[a] district court to which a case is remanded . . . shall resentence a defendant in accordance with section 3553 *and with such instructions as may have been given by the court of appeals*." 18 U.S.C. § 3742(g), (g)(1) (emphasis added); *see West*

16

*II*, 646 F.3d at 748 (drawing connection between § 3742(g) and mandate rule).

"Not surprisingly, '[t]o decide whether the district court violated [our] mandate, it is necessary to examine the mandate and then look at what the district court did.'" *Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1126 (10th Cir. 2003) (alterations in original) (quoting *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 969 (10th Cir. 1991)). "The mandate consists of our instructions to the district court at the conclusion of the opinion, and the entire opinion that preceded those instructions." *Id.*; *see Shipp II*, 644 F.3d at 1129 ("The district court may consider the opinion to determine the intent of the mandate." (collecting cases)); *see also* FED. R. APP. P. 41(a) ("Unless the court directs that a formal mandate issue, the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs.").

In interpreting the scope of a previous mandate, we look for specific limitations on the district court's discretion. "[T]he scope of the mandate on remand in the Tenth Circuit is carved out by exclusion: unless the district court's discretion is specifically cabined, it may exercise discretion on what may be heard." *West II*, 646 F.3d at 749. Put differently, "where the appellate court has not specifically limited the scope of the remand, the district court generally has discretion to expand the resentencing beyond the sentencing error causing the reversal." *Id.* at 748 (quoting *United States v. Moore*, 83 F.3d 1231, 1234 (10th Cir. 1996)); *accord id.* at 749 ("[T]he district court is to look to the mandate for

17

any limitations on the scope of the remand and, in the absence of such limitations, exercise discretion in determining the appropriate scope."). "This approach has been characterized . . . as a presumption in favor of a general remand." *Dish Network Corp. v. Arrowood Indem. Co.*, 772 F.3d 856, 864 (10th Cir. 2014) (omission in original) (quoting *West II*, 646 F.3d at 749).

If there are no specific limitations, therefore, the district court may review "any relevant evidence the court could have heard at the first sentencing hearing." *Moore*, 83 F.3d at 1234 (quoting *United States v. Ortiz*, 25 F.3d 934, 935 (10th Cir. 1994)). Evidence may be presented "even on issues that were not the specific subject of the remand." *Keifer*, 198 F.3d at 801 (quoting *Moore*, 83 F.3d at 1234). After receiving any new evidence, the district court "may impose any reasonable sentence, within or without the Guidelines, consistent with the considerable range of discretion afforded to it." *United States v. Todd*, 515 F.3d 1128, 1139 (10th Cir. 2008).

We review the district court's interpretation of our mandate de novo, *Shipp II*, 644 F.3d at 1129, and then ask whether the court abused the measure of discretion that our mandate left to it, *Procter & Gamble*, 317 F.3d at 1125.

**2**

The parties dispute the scope of *Walker I*'s remand, and specifically whether *Walker I* required the district court to sentence Mr. Walker to a term of imprisonment. We look first at the "remand language" found at the conclusion of

18

*Walker I* before considering the opinion as a whole. We conclude that, while *Walker I*'s language certainly could be reasonably understood as sending a message to the district court that it would be appropriate to impose a harsher sentence on Mr. Walker on remand, this language did not sufficiently restrict the district court's discretion such that it was obliged to sentence him to a term of imprisonment.

**a**

In our examination of the mandate, we start with the "remand language" found in *Walker I*'s concluding paragraphs. *Dish Network*, 772 F.3d at 865–66; *see Shipp II*, 644 F.3d at 1129 ("We start with the mandate language standing alone . . . ."). In that language, we stated:

> We conclude that 33 days in pretrial detention constitutes an unreasonably short sentence. For admittedly robbing two banks as an armed career offender, Mr. Walker would avoid any punishment and the sentence would give little or no weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentence disparities. In these circumstances, we regard the sentence as substantively unreasonable.
>
> Reversed and remanded for resentencing consistent with this opinion.

*Walker I*, 844 F.3d at 1259–60.

A plain reading of this language establishes that we did not specifically require the district court to sentence Mr. Walker to a prison term on remand. To be sure, we did hold that "33 days in pretrial detention constitutes an

19

unreasonably short sentence"—that is, a time-served sentence of no more than thirty-three days (followed by supervised release). *Id.* But we did not direct that a sentence of incarceration, in contrast to a sentence of extended home confinement like the one that the district court imposed, was required following remand. More fundamentally, the remand language focused on the district court's failure to fashion a sentence that respected the sentencing factors of § 3553(a). In other words, our remand language ordered the district court to give serious consideration to the § 3553(a) factors and to impose a sentence that took all those factors into account, but we did not specifically limit the district court's discretion in molding a sentence on remand. *See West II*, 646 F.3d at 748–49. This point is underscored by comparing and contrasting this remand language to the remand language found in our prior decisions where we determined either that the language did *not* impose restrictions on the district court's sentencing discretion or that the language *did* in fact cabin the court's discretion. It should become pellucid that the remand language here is akin to the language in the former situation, i.e., where the sentencing court's discretion was not specifically constrained.

In *United States v. West* ("*West I*"), 550 F.3d 952 (10th Cir. 2008), for example, we remanded for resentencing in light of a district court's failure to make factual findings in response to objections to the PSR. *See id.* at 955, *partially overruled on other grounds by Chambers v. United States*, 555 U.S. 122

(2009), *as recognized by United States v. Shipp* ("*Shipp I*"), 589 F.3d 1084, 1090

n.3 (10th Cir. 2009). There, in our remand language, we stated:

> For these reasons, we are compelled to REMAND this case, directing the district court to resolve the factual disputes West raised or explain why it is unnecessary for sentencing purposes to do so. If the district court determines that the Government did not prove the disputed facts by a preponderance of the evidence, the district court should then conduct a new sentencing proceeding, excluding those disputed and unproven factual allegations.
>
> . . .
>
> We REMAND for the district court to conduct proceedings consistent with this decision.

*Id.* at 975 (footnote omitted). On remand, the district court heard arguments

concerning the factual disputes referenced in *West I* but concluded that the

mandate prevented it from considering a newly raised argument about restitution

imposed at the original sentencing. *See West II*, 646 F.3d at 747 (summarizing

resentencing proceedings). In *West II*, we held that *West I*'s remand language did

not prevent the district court from considering the new argument about restitution:

"[T]he district court erred when it determined that it lacked authority to

reconsider the restitution obligation; the district court had discretion to consider

the issue." 646 F.3d at 750. The district court had discretion to reach the

restitution argument in particular because "the default in this circuit is de novo

resentencing," and the language in *West I* did not specifically command a

different course—*viz.*, one limiting the court's sentencing discretion such that it

21

could not consider the restitution issue.  *Id.*

We reached a similar conclusion regarding our remand language in *United States v. Lang* ("*Lang I*"), 364 F.3d 1210 (10th Cir. 2004), *cert. granted, judgment vacated on other grounds*, 543 U.S. 1108 (2005), *and opinion reinstated in part on other grounds*, *United States v. Lang* ("*Lang II*"), 405 F.3d 1060, 1061 (10th Cir. 2005).  There, we determined that the district court erroneously departed downward from the Guidelines.  *Lang I*, 364 F.3d at 1214–16.  The relevant language stated:

> Based on the foregoing, we REVERSE the district court's downward departures for both Langs, remanding both cases for resentencing pursuant to 18 U.S.C. § 3742(f)(2)(B), and AFFIRM the decision of the district court on the remaining issues.

*Id.* at 1224.  During resentencing, the defendants raised a new constitutional argument that their sentences could not be based on judicial findings that increased their punishment.  *Lang II*, 405 F.3d at 1063 (summarizing district court proceedings).  Notwithstanding the language affirming the district court "on the remaining issues," we had no trouble concluding that *Lang I*'s "general mandate does not contain the type of specificity necessary to limit a district court's authority to resentence on remand."  *Id.* at 1064.  The absence of language "specifically limiting the scope of remand" permitted the district court to reach the new constitutional argument.  *Id.*

However, we reached a contrary conclusion regarding the remand language

22

in *United States v. Webb* ("*Webb I*"), 49 F.3d 636 (10th Cir. 1995), *abrogated in part by United States v. Booker*, 543 U.S. 220 (2005).  There, we also remanded after concluding that the district court erred in its downward departure from the Guidelines.  *Id.* at 637.  Our opinion concluded:

> For the aforementioned reasons, we find the justifications cited by the district court insufficient to set this case outside the "heartland" contemplated by the Sentencing Guidelines.  The decision of the district court to depart from the applicable guideline range is therefore REVERSED.  The case is REMANDED *for resentencing within the prescribed range of twenty-seven to thirty-three months imprisonment.*

49 F.3d at 640 (emphasis added and bold-face font omitted).  "At the time of resentencing, defendant asked the district court to depart downward from the guideline range, based on a combination of three factors"; "[n]otably, these were the same factors relied upon by the district court in departing downward at the time of the original sentencing."  *United States v. Webb* ("*Webb II*"), 98 F.3d 585, 587 (10th Cir. 1996).  The district court declined the defendant's request, reasoning that it did not have the discretion to grant such relief.  *See id.*  We upheld the court's decision, "conclud[ing] the mandate rule prohibited the district court from departing downward from the guideline range enunciated."  *Id.*  In particular, we determined that *Webb I*'s mandate language had "specifically limited" the district court's sentencing discretion on remand because "the *Webb I* panel specifically instructed the district court to resentence [the] defendant within the guideline range of 27–33 months."  *Id.* at 587–88.  "Stated differently, the

23

mandate in *Webb I* directed the district court to do one thing on remand—impose a sentence within the 27- to 33-month range." *Id.* at 588. We have since stated that *Webb I*'s language "demonstrates the specificity that we require in order to limit a district court's authority to resentence on remand." *United States v. Hicks*, 146 F.3d 1198, 1201 (10th Cir. 1998).

Unlike *Webb I*, *Walker I*'s remand language did not require that the district court reach a particular sentencing outcome. It did not, for example, specify that the court should impose a sentence within a particular Guidelines range, nor—more importantly, for present purposes—did it expressly require the district court to sentence Mr. Walker to a prison term. *See Webb I*, 49 F.3d at 640; *cf. United States v. Zander*, 705 F. App'x 707, 710 (10th Cir. 2017) (unpublished) ("Our prior remand directed the district court to resentence Zander 'in accordance with [a] corrected loss calculation' within the $120,000 to $200,000 range. Thus, the district court correctly ruled that the sentencing guideline calculation issues Zander attempted to raise went beyond the limited scope of its mandate." (citation omitted)). Instead, the *Walker I* remand language is akin to the remand language in *Lang I* and *West I*, which did not specifically restrict the sentencing courts' discretion to consider the new arguments that the defendants presented in resentencing proceedings. In particular, *Walker I*'s remand language merely constituted a general remand for resentencing, *see Lang I*, 364 F.3d at 1224, and for "proceedings consistent with this decision," *West I*, 550 F.3d at 975. The

24

government does not cite any case law in which such general language has been found sufficient to limit a district court's sentencing discretion in the same way that our specific language in *Webb I* did. Thus, we conclude that none of *Walker I*'s remand language "specifically cabined" the district court's discretion such that it was required to impose a sentence of incarceration on Mr. Walker. *West II*, 646 F.3d at 749.

**b**

We acknowledge, however, that the remand language "is read in light of our opinion that preceded" it, *Shipp II*, 644 F.3d at 1129; that is to say, it is our "entire opinion," not just the remand language, that outlines the scope of the mandate. *Procter & Gamble*, 317 F.3d at 1126; *see Shipp II*, 644 F.3d at 1129 ("The district court may consider the opinion to determine the intent of the mandate."). In this regard, we recognize that a reasonable reading of our *Walker I* opinion indicates that the panel believed that the district court's original sentence was unreasonably short and that, therefore, a harsher sentence should be imposed on Mr. Walker on remand. *See, e.g.*, 844 F.3d at 1255 ("In our view, this sentence was unreasonably short based on the statutory sentencing factors and our precedent. As a result, we reverse."). Yet, we conclude that *Walker I*'s language—read as a whole—did not require the district court to sentence Mr. Walker to a *prison term* on remand. Under our caselaw, if that had been the *Walker I* panel's intent, it would have spoken with greater specificity.

25

In support of its assertion that the mandate required a prison sentence on remand, the government points to three sets of statements in *Walker I*. First, the government points to our statement that "[t]he value of incapacitating Mr. Walker further supports incarceration of Mr. Walker." *Walker I*, 844 F.3d at 1258. However, incapacitation is only one of "the basic aims of sentencing" reflected in the § 3553(a) factors. *Rita v. United States*, 551 U.S. 338, 347–48 (2007); *see Walker I*, 844 F.3d at 1256 (citing *Rita*, 551 U.S. at 347–48). And the *Walker I* court surely recognized that the sentencing court was obliged on remand "to consider" *all* of these aims in determining an appropriate sentence. *Rita*, 551 U.S. at 347. Therefore, the *Walker I* panel would not have expected the district court to impose a prison term simply because it determined that incapacitation militated in favor of that result.

Moreover, even with respect to the incapacitation factor, our value assessment in *Walker I* obviously was based on the then-existing record. And, notably, the language of that opinion did not specifically preclude the district court from considering new evidence on remand in determining (among other things) whether that value assessment regarding incapacitation continued to support a sentence of incarceration. In other words, in making its incapacitation value assessment on remand, the district court, under the express language of *Walker I*, was free to consider the comparatively more fulsome body of evidence available in the resentencing proceeding. *See Moore*, 83 F.3d at 1234 (citing

26

*Ortiz*, 25 F.3d at 934). Among other things, this body of evidence concerned Mr. Walker's self-motivated rehabilitation, including his sustained period of sobriety and the "positive changes" that he had made in his life. R. at 540–41. And, as the Supreme Court has recognized, a defendant's "self-motivated rehabilitation" may "lend[] strong support to the conclusion that imprisonment [is] not necessary . . . to protect the public from his future criminal acts." *Gall v. United States*, 552 U.S. 38, 59 (2007). Thus, as *Gall* contemplated, a sentencing court upon resentencing might reasonably conclude, after considering new evidence of rehabilitation, that the argument for an imprisonment sentence had been significantly weakened since the first sentencing. Consequently, the district court here would have been quite correct in not reading this first statement the government identified from *Walker I* as obliging it to sentence Mr. Walker to a prison term in order to vindicate the sentencing aim of incapacitation.

Second, the government points to the following statement about *Friedman*: "If the 57 months of incarceration in *Friedman* was an unreasonably light sentence, Mr. Walker's 33 days in pretrial detention was also unreasonably light." *Walker I*, 844 F.3d at 1259; *see also id.* ("Mr. Walker's 33 days in pretrial detention involved less than 2% of the prison time meted out to the *Friedman* defendant."). There is nothing, however, in this *Friedman*-related language that indicates that the district court was obliged to impose a *prison term* on Mr. Walker.

27

Third, as the government notes, the *Walker I* panel stated that "by declining to impose any prison time, the district court effectively failed to give any weight to the congressional values of punishment, general deterrence, incapacitation, respect for the law, and avoidance of unwarranted sentencing disparities." *Walker I*, 844 F.3d at 1259. Though this statement does suggest a causal relationship between the lack of prison time and our conclusion in *Walker I* that the district court failed to give any weight to congressionally defined sentencing factors, it simply does not amount to a sufficiently clear statement to the district court that only the imposition of a prison term on Mr. Walker on remand would indicate that the court properly accorded weight to the § 3553(a) factors that the *Walker I* panel identified. Indeed, it is improbable that the *Walker I* panel intended for its comments at issue here to be interpreted in this way because the panel did not expressly preclude the district court from considering new evidence that might impact the sentencing calculus with respect to *all* of the § 3553(a) factors. *See Pepper v. United States*, 562 U.S. 476, 490 (2011) ("[W]e think it clear that when a defendant's sentence has been set aside on appeal and his case remanded for resentencing, a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and that such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range."); *id.* at 491 (noting that intervening "evidence of postsentencing rehabilitation" "may be highly relevant to several of the § 3553(a) factors").

28

Accordingly, the government fares no better in relying on this third statement of *Walker I*.

Our conclusion that these statements—focusing on them individually—do not amount to sufficiently specific directives to the district court to impose a prison term on Mr. Walker on remand is only reinforced by viewing the statements in the context of other language that the *Walker I* panel used. In particular, in *Walker I*, we repeatedly restated our narrow holding that the specific time-served sentence that the district court imposed on Mr. Walker was substantively unreasonable, without expressly indicating what sentence or sentencing range would be reasonable; particularly, we did not say that only a sentence of imprisonment would be reasonable. *See Walker I*, 844 F.3d at 1255 ("In our view, this sentence was unreasonably short based on the statutory sentencing factors and our precedent. As a result, we reverse."); *id.* at 1256 ("We conclude that the sentence of time served, 33 days in pretrial detention, was unreasonably short."); *id.* at 1258 ("The district court could vary downward, but here it varied down all the way to time served . . . . [The Guidelines range] weighs against a time-served sentence.").

Likewise, we elsewhere focused on the district court's failure to accord proper weight to relevant sentencing factors without opining on what sentencing outcomes would necessarily be the fruit of the court's proper weighing of these

29

factors. *See id.* at 1258 ("The district court gave inadequate attention to [general deterrence]."); *id.* ("But [the value of incapacitation] was never mentioned at the sentencing."). Critically, the foregoing *Walker I* statements pointed out the problems with the district court's sentencing analysis but did not indicate that a proper sentencing analysis would ineluctably result in the district court imposing a term of imprisonment on Mr. Walker.

Thus, especially when viewed in the broader context of other language in the *Walker I* opinion, we cannot conclude that the statements that the government points us to specifically limited or cabined the district court's discretion by requiring it to impose a sentence of incarceration on Mr. Walker. *Dish Network*, 772 F.3d at 864 (citing *West II*, 646 F.3d at 748–49); *accord United States v. Brown*, 212 F. App'x 747, 751 (10th Cir. 2007) (unpublished) ("A review of our case law shows that we require quite a high level of specificity to limit a remand on resentencing."). Our view of this matter is fully congruent with our "presumption in favor of a general remand." *Dish Network*, 772 F.3d at 864.

As noted, we do not doubt that a reasonable reading of our *Walker I* opinion indicates that the panel believed that the district court's original sentence was unreasonably short and that, therefore, a harsher sentence should be imposed on Mr. Walker on remand. However, the message that a harsher sentence would be appropriate on remand could be implemented in many different ways, and the

30

district court did in fact impose a comparatively harsher sentence on Mr. Walker. Recall that the district court increased Mr. Walker's probationary period from three years to ten years, added two years of home confinement, and five hundred hours of community service. *Compare* R. at 352 (detailing original sentence), *with id*. at 377 (detailing sentence after remand). In particular, the imposition of the two years of home confinement certainly increased the severity of Mr. Walker's punishment; home confinement itself functions as an alternative to a period of incarceration in prison. *See* U.S.S.G. § 5C1.1(e)(3) (providing, under its "Schedule of Substitute Punishments," that "[o]ne day of home detention [is substituted] for one day of imprisonment"); *accord United States v. Thomas*, 68 F.3d 392, 393 (10th Cir. 1995); *see also United States v. Rausch*, 570 F. Supp. 2d 1295, 1307 (D. Colo. 2008) ("Home detention and home incarceration are to be used only as alternatives to imprisonment."). While the government bemoans that the home confinement was "exception-riddled," Aplt.'s Opening Br. at 18, the district court appears to have simply imposed the "standard exceptions," R. at 377, leading us to conclude that the home confinement led to a harsher sentence.

Furthermore, we and the Supreme Court have consistently held that probation is not insignificant punishment. *See Gall*, 552 U.S. at 48 ("We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to

31

several standard conditions that substantially restrict their liberty."); *accord*

*United States v. Knights*, 534 U.S. 112, 119 (2001); *Frank v. United States*, 395

U.S. 147, 151 (1969); *see United States v. Ortiz*, 733 F.2d 1416, 1417 (10th Cir.

1984) (per curiam).  Consequently, the increased term of probation also enhanced

the severity of Mr. Walker's sentence.

Thus, it is clear to us that, insofar as *Walker I*'s language did in fact send a

message to the district court that it would be appropriate to impose a harsher

sentence on Mr. Walker on remand, the court did in fact abide by that message.[5]

But, for reasons explicated above, we believe that *Walker I*'s mandate did not—in

the fashion of *Webb I*—sufficiently restrict the district court's discretion such that

it was obliged to sentence Mr. Walker to a prison term.  *Cf. Dish Network*, 772

F.3d at 866 ("The important point is that nothing in the remand language in *DISH*

*I* specifically limited or prevented the district court from allowing the Insurers to

dispute the purported duty to defend on grounds other than those that were

asserted in the Insurers' original motions for summary judgment.  As a result, the

district court did not violate the mandate rule by allowing the Insurers to file new

motions for summary judgment raising additional defenses to the purported duty

---

[5]      We pause to underscore that we are not reaching the question here of whether the district court's harsher sentence was harsh enough in light of the § 3553(a) factors.  That is a question of substantive reasonableness.  And, for the reasons explained *infra*, the government has waived our consideration of that question.

32

to defend.").  Therefore, we reject the government's first contention of error—*viz.*, its argument that the district court violated *Walker I*'s mandate when it declined to sentence Mr. Walker to a prison term.

**B**

We now turn to the government's purported second challenge on appeal, i.e., whether the district court's sentence after remand is substantively reasonable under the rubric of the § 3553(a) factors.  The government, in a cursory manner, asserts that we should vacate and remand Mr. Walker's sentence because it remains unreasonable independent of the scope-of-the-mandate issue.  Mr. Walker, however, asserts that the government waived this secondary argument based on its inadequate briefing.  For the reasons stated below, we agree with Mr. Walker; the government's backup argument is waived.  We thus decline to reach its merits.

**1**

Our preservation rules are part of the "winnowing process" of litigation that permits a court to "narrow what remains to be decided."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 n.6 (2008) (quoting *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 531 (1st Cir. 1993)); *see also Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).  Ordinarily, a party's failure to address an issue in its opening brief results in that issue being deemed waived.  And, ordinarily, we

will decline to reach the merits of waived issues. *See Wyoming v. Livingston*, 443 F.3d 1211, 1216 (10th Cir. 2006) ("Wyoming did not address this issue in its opening appellate brief. The issue is therefore waived."); *accord LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 n.10 (10th Cir. 2004). This briefing-waiver rule applies equally to arguments that are "inadequately presented" in an opening brief. *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("Consistent with this requirement, we routinely have declined to consider arguments that are not raised, *or are inadequately presented*, in an appellant's opening brief." (emphasis added)); *see United States v. Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) (declining to address arguments that were "nominally raised in the Appellant's Brief"). More specifically, arguments may be deemed waived when they are advanced in an opening brief only "in a perfunctory manner." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (quoting *Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994)); *accord Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 915 (10th Cir. 2012).

**2**

Under the foregoing principles, we conclude that the government has waived its challenge to the substantive reasonableness of the district court's sentence through inadequate briefing.

First, we deem it significant that the government's own framing of its

34

argument reveals that, in effect, its sole appellate challenge relates to the scope-of-the-mandate issue. Specifically, when given an opportunity in its reply brief to clarify the essential scope of its appellate argument, the government spoke only of the scope-of-the-mandate issue—*viz.*, its argument that the district court's erred in disregarding our mandate in *Walker I*. In this regard, after noting that Mr. Walker "fault[ed] the government for offering no analysis of the Court's mandate *or* the district court's decision on resentencing," the government tellingly replied that its opening brief "clearly set forth its argument on appeal: the district court abused its discretion by 'ignor[ing] this Court's holding that a no-prison sentence for Walker was substantively unreasonable.'" Aplt.'s Reply Br. at 3 n.1 (emphasis added) (quoting Aplt.'s Opening Br. at 17). The government further maintained in reply that "its brief makes absolutely clear the substance of its argument: the district court exceeded the bounds of 'permissible choice' set by this Court in *Walker I*." *Id.* And it reasoned that because "this Court's decision in *Walker I* limited the discretion of the district court to consider *de novo* whether the sentencing factors supported a sentence of incarceration," "[*i*]*t was thus unnecessary for the government to address in detail the district court's de novo sentencing analysis.*" *Id.* (emphasis added).

Thus, when given a chance in its reply brief to frame the essence of its appellate argument, the government spoke only of the scope-of-the-mandate issue.

The government clearly indicates in its reply brief that it made the strategic decision to elide any detailed discussion of the court's de novo sentencing analysis because such an analysis allegedly was not authorized by the *Walker I* mandate. Put another way, the government viewed its appellate challenge as turning on its scope-of-the-mandate argument to such an extent that the government deemed it "unnecessary . . . to address in detail" the district court's post-remand sentencing analysis under the substantive-reasonableness rubric. *Id*. Through its own words, therefore, we see that the government effectively disclaimed the need to address in any meaningful way the substance of the district court's analysis of the § 3553(a) factors.

And the government's skeletal briefing regarding the district court's sentencing analysis indicates that it acted on its declared framing of the case. As a consequence, the government has effectively waived any challenge to the substantive reasonableness of the district court's sentence (i.e., its weighing of the § 3553(a) factors).

More specifically, a review of the government's briefing demonstrates a lack of meaningful interaction with the district court's § 3553(a) analysis. The district court authored a sixty-one-page opinion in support of its findings, spending multiple pages on numerous factors to establish the purported reasonableness of its sentence. *See, e.g.*, R. at 380–83 (discussing the offense and

Mr. Walker's characteristics); *id.* at 383–98 (reviewing § 3553(a)(2) factors); *id.* at 402–09 (discussing the need to avoid unwarranted sentencing disparities). In particular, the district court conducted an in-depth analysis of the various sentencing factors and made factual and legal findings with respect to each. Yet, despite the district court's comprehensive analysis, the government has provided comparatively little in response. In its opening brief, the government's analysis of the substantive reasonableness of the district court's sentence runs approximately four pages. *See* Aplt.'s Opening Br. at 19–23. To be sure, whether a legal argument has been adequately presented cannot be determined solely by looking at the number of words devoted to it, but it would be illogical to say that this metric is meaningless. Yet, even more importantly here, the few words that the government expended on this topic consist of little more than generalized and conclusory statements, along with reiterations of its primary contention that the new sentence violates our mandate in *Walker I*. *See, e.g.*, *id.* at 21 (noting, with regard to the need for just punishment, that "[t]his factor remained unchanged for resentencing, and the district court again abused its discretion by not giving it appropriate weight and imposing prison time"); *id.* at 23 (noting, with regard to consideration of the Guidelines, simply that "the court disregarded this heavy weight in favor of incarceration when it fashioned another no-prison sentence").

Along these lines, the government repeatedly juxtaposes the district court's

conclusions regarding the § 3553(a) factors—which were based on extensive factual findings made following an evidentiary hearing and a fresh round of arguments by the parties on remand—with *Walker I*'s assessment of the legal import of these sentencing factors. The government then asserts conclusorily that the court erred by straying from *Walker I*. *See, e.g.*, *id.* at 20 ("[T]he court erred by focusing almost exclusively on these recent developments [i.e., those following the initial sentencing]. The court also erred by over-valuing its theories about the role that addictions played in Walker's psychological make-up and criminal culpability. This Court's observations in *Walker I* apply with equal force to the district court's resentencing . . . ."); *id.* 21–22 ("The district court was not free simply to disregard this Court's decision in *Walker I* and discount the sentencing goals of general deterrence and incapacitation."). However, critically, the government essentially elides the fact that the district court's § 3553(a) findings and legal conclusions were based on a different, more expansive, sentencing record than the one considered by the *Walker I* panel. And, more specifically, the government makes no attempt to engage with the district court's reasoning and to explain why *Walker I*'s assessments of the § 3553(a) factors still should be deemed controlling notwithstanding the more developed sentencing record made following remand.

Furthermore, arguments advanced for the first time in a litigant's reply

brief will ordinarily not forestall a conclusion of waiver. *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("[A]rguments raised for the first time in a reply brief are generally deemed waived."); *accord United States v. Smith*, 606 F.3d 1270, 1284 n.5 (10th Cir. 2010). But even putting that principle aside would not avail the government. In its reply brief, the government directly advances an argument about substantive reasonableness only in a *single footnote* at the very end of the brief. *See* Aplt.'s Reply Br. at 10 n.2 ("[E]ven if the mandate were not so limited [as to prevent a sentence less than imprisonment], the district court abused its discretion because a sentence with no additional term of imprisonment is substantively unreasonable. As the government argues in its opening brief, the sentencing factors in § 3553(a) render a sentence with no term of imprisonment substantively unreasonable."). And that argument is conclusory and perfunctory and does not engage with the district court's comprehensive § 3553(a) analysis. Given that we have routinely declined to consider arguments that are only raised perfunctorily in footnotes, the government's substantive-reasonableness argument in its reply brief (such that it is) cannot shake our conclusion of waiver. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived."); *accord In re C.W. Mining Co.*, 740 F.3d 548, 564 (10th Cir. 2014); *see also United States v. Berry*, 717 F.3d 823, 834 n.7 (10th Cir.

39

2013) ("We decline to address the issue because it is raised only in a footnote and was not raised in the district court.").

To be clear, whether issues should be deemed waived is a matter of discretion. *See, e.g.*, *Abernathy v. Wandes*, 713 F.3d 538, 552 (10th Cir. 2013) ("[T]he decision regarding what issues are appropriate to entertain on appeal in instances of lack of preservation is discretionary."). Thus, in exercising our discretion here to treat the government's substantive-reasonableness argument as waived, we emphasize that the government's inadequate briefing is particularly problematic because of the deferential, abuse-of-discretion standard of review that controls our consideration of the substantive reasonableness of sentences. More specifically, the district court enjoys wide discretion in crafting sentences that it deems appropriate for individual offenders, *see Gall*, 552 U.S. at 51–52, and where the district court "root[s] its decision in specific, permissible facts," we will generally affirm that sentence even if we would have weighed the facts differently ourselves, *United States v. Barnes*, 890 F.3d 910, 916, 920 (10th Cir. 2018); *see United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) ("[T]here are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing."). In short, even under ordinary circumstances, winning "a substantive reasonableness appeal is no easy thing," *United States v. Fraser*, 647 F.3d 1242, 1247 (10th Cir. 2011) (quoting *United*

*States v. Rendon-Alamo*, 621 F.3d 1307, 1310 n.** (10th Cir. 2010)).

Viewed through the lens of this precedent, we are especially disinclined to consider reversing a district court's sentence on substantive-reasonableness grounds unless the litigant provides us with meaningful arguments that challenge the district court's reasoning. *See, e.g.*, *United States v. Brooks*, 736 F.3d 921, 942 (10th Cir. 2013) (deeming criminal defendant's "argument waived" where the defendant claimed the district court erred in enhancing his sentence by attributing certain drug quantities to him but provided "no citations to the record of the quantity of drugs" relevant to the enhancement). Put another way, given the considerable leeway afforded district courts in fashioning substantively reasonable sentences under the § 3553(a) factors, if a litigant wants us to find a sentence substantively unreasonable, it needs to articulate its challenge with particularity. Ordinarily, it would not be prudent for us to attempt to discern error in a district court's reasoning under the § 3553(a) factors when the litigant's challenge lacks such particularity. *Cf. Abernathy*, 713 F.3d at 552 ("[W]e are nevertheless reluctant to definitively opine on the merits of Mr. Abernathy's Suspension Clause argument under de novo review, because the government has devoted very little time to addressing it, and, thus, we are deprived of the benefit of vigorous adversarial testing of the issue . . . ."). The government's substantive-reasonableness arguments here are wanting on this basis of

41

particularity and are, more generally, inadequately briefed. Thus, we exercise our discretion under the waiver doctrine to decline to consider the government's substantive-reasonableness challenge. Therefore, we uphold the district court's sentencing order, without opining on the merits of the substantive-reasonableness question.

**III**

Because our mandate in *Walker I* did not specifically limit the district court's discretion by requiring it to impose a sentence of imprisonment, we reject the government's contention that the district court violated our mandate. Further, we do not express a view on the merits of whether the district court's sentencing was substantively reasonable, as the government waived its argument on that point by failing to adequately address the district court's analysis. Thus, we **affirm** the district court's sentencing order and **deny as moot** the government's request for reassignment on remand.